**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

THE UPSTATE NEW YORK ENGINEERS PENSION
FUND and THE UPSTATE NEW YORK ENGINEERS
PENSION FUND BOARD OF TRUSTEES,

5:25-cv-01198 (BKS/ML)

Plaintiffs,

v.

AMERICAN IRON & CRANE, INC.; AMERICAN
CRANE & RIGGING, LLC; HOY REAL ESTATE
ENTERPRISES LLC; and GEORGE MICHAEL HOY,

Defendants.

---

**Appearances:**

*For Plaintiffs:*
Richard S. Siegel
Meredith B. Golfo
Slevin & Hart, P.C.
1300 Connecticut Avenue
Washington, DC 20036

*For Defendants:*
Brendan F. Baynes
The Baynes Law Firm, PLLC
14340 Route 9W
PO Box 160
Ravena, NY 12143

Donald J. Hillmann
Adrianne M. Meicht
Couch White, LLP
540 Broadway
PO Box 22222
Albany, NY 12201

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

Plaintiffs The Upstate New York Engineers Pension Fund and its Board of Trustees filed

this action against Defendants American Iron & Crane, Inc.; American Crane & Rigging, LLC;

Hoy Real Estate Enterprises LLC, (collectively, the "Company Defendants"); and George

Michael Hoy, alleging that Defendants violated the Employee Retirement Income Security Act

of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., for failure to make withdrawal liability payments.

(Dkt. No. 1). Plaintiffs allege that American Iron & Crane was a party to one or more collective

bargaining agreements that required it to make contributions to the Pension Fund. (*Id.* at ¶ 12).

According to Plaintiffs, American Iron & Crane effected a complete withdrawal from the

Pension Fund within the meaning of Section 4203(a)(2) of ERISA, 29 U.S.C. § 1383(a)(2). (*Id.*

at ¶ 13). Plaintiffs allege that they assessed American Iron & Crane, as well as all American

Crane & Rigging, Hoy Real Estate Enterprises, and Hoy—as trades and businesses allegedly

sharing common control—with withdrawal liability in the amount of $189,938.00 (the

"Assessment"). (*Id.* at ¶¶ 14, 17). Plaintiffs further allege that Defendants did not timely request

review of the Assessment and began making quarterly payments towards their withdrawal

liability pursuant to a schedule set by Plaintiffs. (*Id.* at ¶¶ 18–19). According to Plaintiffs,

Defendants failed to make two consecutive payments on time, which put Defendants in default

per Plaintiffs' Withdrawal Liability Policy. (*Id.* at ¶¶ 24–25). Plaintiffs now seek $111,550.01,

which they contend is the present value of the accelerated withdrawal liability as of the date of

default, together with interest, liquidated damages, and attorney's fees and costs. (*Id.* at 10).

Plaintiffs move for default judgment under Federal Rule of Procedure 55(b)(2) against

the Company Defendants. (Dkt. No. 17).  The Company Defendants move to vacate default

2

under Federal Rule of Civil Procedure 55(c).[1] (Dkt. No. 24). For the reasons that follow, the

Company Defendants' motion to vacate the default judgment is denied and the Plaintiffs' motion

for default judgment is granted.

## II.    BACKGROUND

Plaintiffs filed their complaint on September 2, 2025, (Dkt. No. 1), and served the

Company Defendants with the complaint on September 5, 2025. (Dkt. Nos. 7–9). On October 3,

2025, Plaintiffs requested a clerk's entry of default under Federal Rule of Civil Procedure 55(a)

for the Company Defendants' failure to answer or otherwise appear in this action. (Dkt. No. 12).

Plaintiff's request was accompanied by a showing that the Company Defendants are not infants,

incompetent persons, or in the military;[2] the Company Defendants failed to appear in this action;

and Plaintiffs properly served the summons and complaint on the Company Defendants. (Dkt.

No. 12-1, at ¶ 9). Plaintiffs received a clerk's entry of default against the Company Defendants

on October 17, 2025. (Dkt. No. 13). Plaintiffs filed the instant motion for default judgment under

Federal Rule of Civil Procedure 55(b) on November 13, 2025. (Dkt. No. 17).

Plaintiffs served Hoy with the complaint on November 24, 2025. (Dkt. No. 20). The

Company Defendants, without leave of the Court, and Hoy filed an answer to the complaint on

---

[1] The Company Defendants "oppose Plaintiff[s'] motion for default judgement and seek leave for a limited appearance to oppose and participate in the determination of damages" under Federal Rule of Civil Procedure 55(b)(2). (Dkt. No. 24-2, at 6). "[T]he Second Circuit has held that 'opposition to a motion for a default judgment can be treated as a motion to set aside the entry of default despite the absence of a formal Rule 55(c) motion.'" *Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 336 (S.D.N.Y. 2013) (quoting *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)). Therefore, although the Company Defendants do not move to vacate the default judgment under Federal Rule of Civil Procedure 55(c), the Court considers the opposition to Plaintiffs' motion as a motion to vacate the entry of default under Rule 55(c).

[2] Plaintiffs' counsel filed the declaration making this showing on October 3, 2025 when this district's local rules required a party or party's attorney to submit an affidavit showing that the party against whom it seeks default judgment is not in the military. The Local Rules were amended on January 1, 2026 to remove this requirement. *See* N.D.N.Y. L.R. 55.1(a).

December 12, 2025. (Dkt. No. 21). Defendants moved to vacate the default judgment on January 26, 2026. (Dkt. No. 24). Plaintiffs oppose that motion. (Dkt. No. 27).

## III.    STANDARD OF REVIEW

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *see also* N.D.N.Y. L.R. 55.1 (requirements for a clerk's certificate of entry of default). Second, under Rule 55(b)(2), the plaintiff must "apply to the court for entry of a default judgment." *Priestly*, 647 F.3d at 505; *see also* N.D.N.Y. L.R. 55.2(b). In support of its motion, Plaintiff has submitted a memorandum of law, declaration of counsel with supporting exhibits and a proposed order and judgment. (Dkt. No. 17).

## IV.    DISCUSSION

### A.    Motion to Vacate the Default Judgment

Rule 55(c) of the Federal Rules of Civil Procedure provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Although the Rule does not define "good cause," "[i]n practice, courts apply the same set of factors" in deciding motions under both Rule 55(c) and Rule 60(b), which are "applied more rigorously in the case of default judgments" and more leniently in addressing entries of default. *RLS Assocs., LLC. v. United Bank of Kuwait PLC.*, No. 01-cv-1290, 2002 WL 122927, at *3, 2012 U.S. Dist. LEXIS 1371, at *7–8 (S.D.N.Y. Jan. 29, 2002). Those factors are: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil*

4

*Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (citations omitted).  "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result."  *Id.*

Although these criteria must be applied keeping the Second Circuit's "strong preference for resolving disputes on the merits" in mind, *Brien v. Kullman Indus., Inc.*, 71 F.3d 1073, 1077 (2d Cir. 1995), courts also "have an interest in expediting litigation, [and] abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct."  *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1998).  Accordingly, an "absence of prejudice to the nondefaulting party would not in itself entitle the defaulting party to relief," leaving the court with "discretion to deny the motion to vacate [a default judgment] if it is persuaded that the default was willful and is unpersuaded that the defaulting party has a meritorious defense."  *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) (also citing *Marziliano v. Heckler*, 728 F.2d 151, 157 (2d Cir. 1984), for the proposition that the same principles apply with respect to a motion to vacate an entry of default under Rule 55(c)).

Here, the Company Defendants have not addressed any of the factors, and "do not dispute that they are members of a control group or that they have withdrawal liability to Plaintiff." (Dkt. No. 24-2, at 4). Therefore, the Court denies the Company Defendants' motion to vacate the default judgment.

### B.    Liability

By failing to appear in this action or oppose this motion, the Company Defendants are deemed to have admitted the factual allegations in the complaint. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the

complaint." (citation omitted)); *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09-cv-4810, 2011 WL 1131401, at \*2, 2011 U.S. Dist. LEXIS 32249, at \*5–6 (E.D.N.Y. Mar. 11, 2011) ("In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim."), *report and recommendation adopted*, 2011 WL 1130457, 2011 U.S. Dist. LEXIS 32246 (E.D.N.Y. Mar. 28, 2011). But before entering default judgment, the Court must review the allegations to determine whether Plaintiffs have stated a valid claim for relief. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Telequip Corp. v. Change Exch.*, No. 01-cv-1748, 2004 WL 1739545, at \*1, 2004 U.S. Dist. LEXIS 14892, at \*3 (N.D.N.Y. Aug. 3, 2004).

### 1.       Common Control

Here, Plaintiffs allege that Defendants are under common control. (Dkt. No. 1 ¶¶ 37, 44). However, because Plaintiffs seek default judgment against only the Company Defendants, (*see* Dkt. No. 17, at 1), the Court considers only whether the Company Defendants are under common control.

To ensure the viability of multiemployer pension plans against the failure of a contributing employer, the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1381, et seq., has broad provisions that disregard the usual legal barriers between affiliated, but legally distinct, businesses." *UFCW Loc. One Pension Fund v. Enivel Props., LLC*, 791 F.3d 369, 371 (2d Cir. 2015). Under 29 U.S.C. § 1301(b)(1) and applicable regulations at 26 C.F.R. §§ 1.414(c)-1 through 1.414(c)-5, "[a]ll 'trades or businesses' under 'common control' are treated as a single employer for the purpose of collecting withdrawal liability, and each is jointly and severally liable for the withdrawal liability of another." *Id.* (citing 29 U.S.C. § 1301(b)(1); *Corbett v. MacDonald Moving Servs., Inc.,* 124 F.3d 82, 86 (2d Cir. 1997)).

6

"[U]nder a 'common control' theory, [a p]laintiff must set forth facts illustrating that [the defendant entities] are members of a 'parent-subsidiary' or 'brother-sister' group of trades or businesses under common control." *Div. 1181 Amalgamated Transit Union–N.Y. Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 610 (E.D.N.Y. 2017*)* (quoting *I.L.G.W.U. Nat'l. Ret. Fund v. ESI Grp., Inc.*, No. 92-cv-0597, 2002 WL 999303, at *5, 2002 U.S. Dist. LEXIS 8614, at *16 (S.D.N.Y. May 15, 2002) (internal quotations omitted)).

"Brother-sister corporations are defined as two or more corporations (i) where the same five or fewer persons own a controlling interest in each organization, and (ii) such persons are in effective control of each organization, taking into account the ownership of each person only to the extent such ownership is identical with respect to each such organization." *Ferrara v. Smithtown Trucking Co.*, 29 F. Supp. 3d 274, 286 (E.D.N.Y. 2014) (citing 26 C.F.R. § 1.414(c)-(2)(c)). "A 'controlling interest' is defined as ownership of stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote of such corporation, or at least 80 percent of the total value of shares of all classes of stock in such corporation." *Id.* (citing 26 C.F.R. § 1.414(c)–2(b)(2)(i)(A)). "'Effective control' is defined as ownership of 'stock possessing more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of such corporation.'" *Id.* (quoting 26 C.F.R. § 1.414(c)–2(c)(2)(i)). "Therefore, "a 'brother-sister' group of businesses under common control must be controlled by the same five or fewer persons owning at least 80 percent of the shares of each corporation, with at least 50 percent of the shareholder's ownership interests in each corporation identical." *Id.*; *see also ESI Grp. Inc.*, 2002 WL 999303, at *6, 2002 U.S. Dist. LEXIS 8614, at *18 (citing 26 C.F.R. § 1.414(c)-(2)(c).

Here, Plaintiffs allege that Hoy owns 100% of the Company Defendants. (Dkt. No. 1, ¶ 36; *see also* Dkt. No. 1-1, at 5–6). Therefore, the Company Defendants are under common control within the meaning of the MPPAA. *See Ferrara*, 29 F. Supp. at 287 (finding that the plaintiffs adequately allege that "Spevack [a defendant] is the 100 percent owner of each of the companies and that, therefore, the companies constitute a "brother-sister" group of trades or business under common control, because Spevack (the only of 'the same five or fewer persons' in the group) owns a controlling interest (more than 80 percent of voting power) and is in effective control (holding more than 50 percent of voting power) of each of the companies").

### 2.    Withdrawal Liability

"In a multiemployer pension plan, participating employers make regular contributions into a common fund that is regulated by ERISA." *See Mar-Can Transportation Co., v. Loc. 854 Pension Fund*, 167 F.4th 581, 584 (2d Cir. 2026) (citing 29 U.S.C. §§ 1002(37), 1301(a)(3)). "Each employer's collective bargaining agreement with its workers' union designates the plan to which the employer will contribute and sets out the terms of those contributions." *Id.* (citing *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 605 (1993)). "The consolidated funds are available to pay benefits owed to employees of any participating employer." *Id.* at 585.

"One of the MPPAA's key reforms was that it obligated a company withdrawing from a multiemployer plan to pay 'withdrawal liability.'" *Id.* at 586 (citing 29 U.S.C. § 1381). "The term 'withdrawal liability' refers to 'an employer's obligation . . . to fund the old plan to the extent that that plan remains responsible [for providing benefits to the withdrawing employer's] employees upon their retirement." *Id.* (quoting *T.I.M.E.-DC, Inc. v. Mgmt.-Lab. Welfare &*

*Pension Funds, of Loc. 1730 Int'l Longshoremen's Ass'n*, 756 F.2d 939, 946 (2d Cir. 1985)). The Second Circuit has explained withdrawal liability and "complete withdrawal" as follows:

> Withdrawal liability is calculated based on the MPPAA, and generally represents the portion of a multiemployer pension fund's "unfunded vested benefits" allocable to the withdrawing employer. A "complete withdrawal," which can trigger liability under the statute, occurs when an employer "permanently ceases to have an obligation to contribute under the plan" or "permanently ceases all covered operations under the plan," for example by going out of business, or renegotiating the terms of its CBA. When this occurs, "the entity maintaining the plan[ ] must determine the amount of the employer's withdrawal liability, notify the employer of the amount[,] and make a demand for payment."

*C&S Wholesale Grocers, Inc.*, 24 F.4th at 170–71 (first quoting 29 U.S.C. § 1381(b)(1); then 29 U.S.C. § 1383(a); and then quoting *I.L.G.W.U. Nat'l Ret. Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 881 (2d Cir. 1988)).

"The initial notification to the employer must occur 'as soon as practicable after an employer's complete or partial withdrawal.'" *D & A Bus Co., Inc.*, at 607 (quoting 29 U.S.C. § 1399(b)(1))."Within 90 days after the employer receives the notification from the plan sponsor, the employer can request that the plan sponsor: (1) 'review any specific matter relating to the determination of the employer's liability and the schedule of payments;' (2) 'identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer;' and (3) 'furnish any additional relevant information to the plan sponsor.'" *Id.* (quoting 29 U.S.C. § 1399(b)(2)(A)). "Any dispute over the plan's calculation of withdrawal liability must be settled through arbitration, and if the employer fails to request arbitration within the statutory timeframe, it is barred from challenging the amount of withdrawal liability calculated by the plan." *Trs. of Loc. 531 Pension Fund v. Flexwrap Corp.*, 818 F. Supp. 2d 585, 589 (E.D.N.Y. 2011); *see also Gesualdi v. Seacost Petroleum Prods., Inc.*, 97 F. Supp. 3d 87, 98

(E.D.N.Y. 2015) ("[I]f an employer fails to initiate the arbitration process to contest the amount of withdrawal liability assessed against it, the employer has waived its right to arbitration, and a federal court will not make an independent determination that the plan sponsor's assessment was unreasonable." (quoting *Vacca v. Bridge Chrysler Jeep Dodge, Inc.*, No. CV 06-3543, 2008 WL 4426875, at *6, 2008 U.S. Dist. LEXIS 85223, at *16 (E.D.N.Y. Sep. 4, 2008)); 29 U.S.C. §§ 1401(a)(1), (b)(1) ("If no arbitration proceeding has been initiated pursuant to subsection (a), the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor."). "[N]otwithstanding an employer's request for review of the plan's withdrawal liability determination, '[w]ithdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . beginning no later than 60 days after the date of the demand." *D & A Bus Co., Inc.*, 270 F. Supp. 3d at 607 (quoting 29 U.S.C. § 1399(c)(2)); *see also Mar-Can Transportation Co.*, 167 F.4th at 587.

"In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C.A. § 1399(c)(5). A "default" under section 1399 means "(A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and (B) any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability." *Id.* Under section 1399(c)(5), "[w]hen a fund adopts a rule identifying . . . an event that it determines indicates a substantial likelihood that the employer will be unable to pay its withdrawal liability[,] the fund is entitled to an immediate payment of the outstanding amount of the assessed liability should the event occur."

*Nat'l Ret. Fund v. InterContinental Hotels Grp. Res., LLC*, No. 19-CV-8018, 2020 WL 1922755, at *7, 2020 U.S. Dist. LEXIS 69991, at *17–18 (S.D.N.Y. Apr. 21, 2020) (citing 29 U.S.C. § 1399(c)(5)(B) and *Ret. Fund of Fur Mfg. Indus. v. Robert Goldberg Furs, Inc.*, 754 F. Supp. 356, 357 (S.D.N.Y. 1991)).

"Generally, where a plan sponsor seeks withdrawal liability payments, it must 'show only that it complied with statutory procedural requirements.'" *D & A Bus Co., Inc.*, 270 F. Supp. 3d at 608 (quoting *Trs. of Amalgamated Ins. Fund v. Steve Petix Clothier, Inc.*, No. 03-cv-4530, 2004 WL 67480, at *2, 2004 U.S. Dist. LEXIS 418, at *7 (S.D.N.Y. Jan. 15, 2004)). "Thus, '[t]he plan sponsor must: (1) determine that an employer has partially or completely withdrawn from a multiemployer plan; (2) determine the amount of the employer's withdrawal liability; (3) notify the employer of the amount of liability and the payment schedule; and (4) demand payment according to the schedule.'" *Id.* at 608–09.

The Trustees are fiduciaries of the Pension Fund as defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). (Dkt. No. 1, ¶ 4). The Pension Fund is a plan, employee pension benefit plan, and a multiemployer plan within the meaning of Sections 3(2), (3), and (37) of ERISA, 29 U.S.C. § 1002(2), (3), (37). (*Id.* at ¶ 3). The Company Defendants are employers under Sections 3(5) and 4203(a) of ERISA, 29 U.S.C. §§ 1002(5), 1383(a).[3]

American Iron & Crane "was a party to one or more collective bargaining agreements . . . obligating it to make contributions to the Pension Fund on behalf of covered employees." (*Id.* at ¶ 12). The Trustees determined that American Iron & Crane effected a complete withdrawal from the Pension Fund in March 2021. (*Id.* at ¶ 13). Plaintiffs notified

---

[3] Plaintiffs allege that each of the Defendants are employers within the meaning of Sections 3(5) and 4203(a) of ERISA, 29 U.S.C. §§ 1002(5), 1383(a). (Dkt. No. 1, ¶ 5). However, because Plaintiffs seek default judgment only against the Company Defendants, the Court does not consider that the allegation applies to Hoy.

American Iron & Crane, through Hoy, of the assessed withdrawal liability in the Assessment, explaining that American Iron & Crane had "permanently ceased its obligation to contribute to the Fund pursuant to the terms of its memorandum of understanding with I.U.O.E. Local No. 158." (Dkt. No. 1, ¶ 16; Dkt. No. 17-4, at 2). The Assessment was delivered on September 17, 2021. (Dkt. No. 1 ¶ 18). The Assessment stated that the Pension Fund determined the withdrawal liability to be $189, 938.00, "which pursuant to ERISA § 4219(c), 29 U.S.C. § 1399(c), was payable as a lump sum or in 27 quarterly installment payments of $8,488.50, and a final quarterly installment payment of $3,255.37." (Dkt. No. 1, ¶ 17; *see also* Dkt. No. 17-4, at 2).

The Company Defendants did not dispute their withdrawal liability through arbitration within the ninety-day period afforded by the statute; they made thirteen quarterly payments pursuant to the schedule set by the Assessment. (Dkt. No. 1, ¶¶ 18–20). Plaintiffs therefore have satisfied the statutory and procedural requirements for withdrawal liability as to the Company Defendants. *D & A Bus Co., Inc.*, 270 F. Supp. 3d at 609 (accepting recommendation's finding that the plaintiff "satisfied the statutory prerequisites set forth in 29 U.S.C. § 1399(b)" entitling it to default judgment as to withdrawal liability where the complaint alleged that the defendant completely withdrew from the multiemployer pension plan, and that the plaintiff determined the amount of the defendant's withdrawal liability and sent notice, demand, and a payment schedule to the defendant).

Plaintiffs have also established their entitlement under 29 U.S.C. § 1399(c)(5)(B) to accelerated payment of the total withdrawal liability amount. Plaintiffs adopted a Withdrawal Liability Policy, pursuant to section 1399(c)(5)(b), which defines a default to include:

> actions and/or omissions by a Withdrawn Employer which indicate a substantial likelihood that the Withdrawn Employer will be unable to pay its withdrawal liability payments as determined by the Pension Fund's Board of Trustees in their sole discretion, including but not limited to a substantial likelihood that the

12

Withdrawn Employer lacks credit worthiness and may be unable to pay its total withdrawal liability because of" various factors, including that "the Withdrawn Employer has failed to make payments of two or more withdrawal liability installments and has continued in default of these payments ten (10) days or more following the due date.

(Dkt. No. 1, ¶ 24; *see also* Dkt. No. 17-6, at 7–8). Pursuant to this Policy, Plaintiffs determined that there was a substantial risk that the Company Defendants would be unable to pay their withdrawal liability because they failed to timely make two consecutive installment payments. (Dkt. No. 1, ¶ 25). Therefore, Plaintiffs are entitled to the outstanding amount of withdrawal liability plus accrued interest. *See Trs. of Loc. 813 Pension Tr. Fund v. A.A. Danzo Sanitation, Inc.*, No. 23-CV-08493, 2024 WL 4250355, at *4, 2024 U.S. Dist. LEXIS 138692, at *11–12 (E.D.N.Y. Aug. 5, 2024) (recommending accelerated withdrawal liability where the fund adopted withdrawal liability procedures and determined that there was a substantial likelihood that the defendant would be unable to pay its withdrawal liability pursuant to those procedures), *report and recommendation adopted*, 2024 U.S. Dist. LEXIS 171780 (E.D.N.Y. Sep. 23, 2024).

### C.    Damages

Having established that Plaintiffs are entitled to a finding of liability with respect to their withdrawal liability claim against the Company Defendants, the Court considers the documentary evidence Plaintiffs have submitted in support of their request for damages. "In determining the categories of damages to which Plaintiff is entitled, the Court points out that any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of [29 U.S.C. § 1145])." *D & A Bus Co., Inc.*, 270 F. Supp. 3d at 614 (internal quotations and citation omitted).

#### 1.    Withdrawal Liability

Where the damages sought "consist, in part, of delinquent withdrawal liability payments and where the employer has otherwise failed to timely request arbitration, courts have the

13

discretion to adopt [ ] the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated." *D & A Bus Co.*, 270 F. Supp. 3d at 613 (internal quotations and citation omitted) (collecting cases); *see also A.A. Danzo Sanitation, Inc.*, 2024 WL 4250355, at *3, 2024 U.S. Dist. LEXIS 138692, at *8–9 ("Indeed no documentation is required to support a finding of withdrawal liability if the defendant fails to initiate arbitration") (collecting cases); *Pavers & Rd. Builders Dist. Council Pension Fund v. Nico Asphalt Paving, Inc.*, 248 F. Supp. 3d 374, 378 (E.D.N.Y. 2017) ("If arbitration is not commenced within the statutory timeframe, the plan's determination of the employer's withdrawal liability becomes final and must be paid in accordance with the schedule set forth in the initial notice." (citing 29 U.S.C. § 1401(b)(1))).

Plaintiffs seek $111,550.01, which they assert "was the present value of the [Company Defendants'] 15 unpaid Withdrawal Liability payments as of the acceleration." (Dkt. No. 1, ¶ 26). Defendants dispute Plaintiffs' calculation of withdrawal liability, arguing that Plaintiffs do not provide "an explanation of the calculation made by Plaintiff[s] to arrive at 'present value' or proof in an admissible form support such calculation." (Dkt. No. 24-2, at 4). Defendants' argument is without merit because the Company Defendants waived their right to challenge the amount of withdrawal liability when they did not timely request review or initiate arbitration. *Flexwrap Corp.*, 818 F. Supp. 2d at 589; *see also Seacost Petroleum Prods., Inc.*, 97 F. Supp. 3d at 98. Thus, the Court concludes that Plaintiffs have sufficiently established the amount of withdrawal liability owed in this case.[4] *See Daniello v. Planned Sys. Integration Ltd.*, No. 07-

---

[4] It appears that the remaining amount of withdrawal liability for the missing fourteen quarterly payments of $8,488.50, and the final quarterly payment of $3,255.37 totals $122,094.37. This is greater than what Plaintiffs now seek. (Dkt. No. 17-1, at 8–9 ("[T]he [Company Defendants] left unpaid [their] 14 final full quarterly payments of $8,488.50 each plus a fifteenth and final quarterly payment of $3,255.37 for an unpaid principal balance of $122,094.37," however, "Plaintiffs do not seek to recover the entire Unpaid Withdrawal Liability, instead Plaintiffs only seek to recover $111,550.01.")). For the reasons discussed in § IV.C.1 and because the principal damages Plaintiffs request is less than what appears to be the balance of the Company Defendants' withdrawal liability, Plaintiffs are entitled to withdrawal liability in the amount of $111,550.01.

CV-1729, 2009 WL 2160536, at *5, 2009 U.S. Dist. LEXIS 132835, at *12 (E.D.N.Y. July 17, 2009) (accepting recommendation's finding that the plaintiff was entitled to the withdrawal liability it assessed against the defendant "even though the plaintiffs here have submitted no documentation as to how that figure was calculated" because the defendant did not initiate arbitration as to the plaintiff's determination of withdrawal liability); *Bd. of Trs. of the UFCW Loc. 174 Pension Fund v. Jerry WWHS Co.*, No. 08-CV-2325, 2009 WL 982424, at *4, 2009 U.S. Dist. LEXIS 130589, at *9–10 (E.D.N.Y. Apr. 10, 2009) (accepting recommendation's finding that the defendant is liable for the amount of withdrawal liability "[a]lthough the record plainly does not suffice to support the calculation on which the Trustees rely" and there lacked "documentary support" for the amount of withdrawal liability because the defendant waived its right to contest the amount of withdrawal liability); *Loc. 1922 Pension Fund v. Broadway Elec. Supply, Co.,* No. cv-19-2344, 2020 WL 1931635, at *11, 2020 U.S. Dist. LEXIS 47889, at *31–32 (E.D.N.Y. Mar. 18, 2020) (recommending the award of plaintiffs' requested amount of withdrawal liability even though they "do not explain how that figure was calculated" because "[t]he law is unforgiving where, as here, an employer fails to take action in a timely manner after being notified" (quoting *Labarbera v. Utd. Crane & Rigging Servs., Inc.*, Nos. 08-CV-3274, 2011 WL 1303146, at *5, 2011 U.S. Dist. LEXIS 20939, at *13 (E.D.N.Y. Mar. 2, 2011))), *report and recommendation adopted*, No. 19-cv-2344, (Electronic Order Adopting Report and Recommendation) (E.D.N.Y. May 4, 2020).

### 2.    Interest and Liquidated Damages

Plaintiffs seek interest at a rate of 7.5 percent from the date the Pension Fund accelerated the withdrawal liability, July 8, 2025, to the date of filing of the motion for default judgment, November 13, 2025. (Dkt. No. 17-1, at 10; *see also* Dkt. No. 17-6, at 8). Plaintiffs also seek an additional award of 20 percent liquidated damages on the outstanding withdrawal liability. (Dkt.

15

No. 17-1, at 11; *see also* Dkt. No. 17-6, at 8; Dkt. No. 17-8, at 4). Both ERISA, 29 U.S.C. § 1132(g)(2), and Plaintiffs' Withdrawal Liability Policy provide for interest and liquidated damages. (*See* Dkt. No. 17-6, at 8 (allowing for interest at the rates provided "under the regulations of the Pension Benefit Guaranty Corporation in accordance with 29 C.F.R. Section 4219.32" and "liquidated damages at the rate set forth in the Upstate New York Engineers Pension Fund's Collections Policy"); Dkt. No. 17-8, at 4 (allowing for liquidated damages equal to twenty (20%) of the delinquent fringe benefit contributions"); *see also see also D & A Bus Co.*, 270 F. Supp. at 615–16 (awarding liquidated damages of 20 percent and interest on withdrawal liability); *UFCW Loc. One Health Care Fund v. Greene Great Am., Inc.*, No. 23-CV-1441, 2025 WL 1506163, at *5, 2025 U.S. Dist. LEXIS 99628, at *12-13 (N.D.N.Y. May 27, 2025) (same). Accordingly, Plaintiffs have demonstrated their entitlement to an award of interest on the withdrawal liability in the amount of $2,901.13, and liquidated damages in the amount of $22,310.00.

### 3.   Attorneys' Fees and Costs

Plaintiffs seek and are entitled to recover the attorneys' fees and costs they incurred in connection with their efforts to collect the Company Defendants' withdrawal liability in this case. Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2) and the Plaintiffs' Withdrawal Liability Policy allow for such an award. *See* 29 U.S.C. § 1132(g)(2)(D) (reasonable attorney's fees and costs of the action); (*see also* Dkt. No. 17-6, at 8 ("The Withdrawn Employer will also be assessed . . . attorneys' fees and costs incurred in collecting delinquent withdrawal liability payments"). District courts have "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008). "In calculating attorney's fees, the district court must first determine the 'lodestar—the product of a reasonable hourly rate and the reasonable number of hours required

16

by the case—[which] creates a presumptively reasonable fee.'" *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) (quoting *Millea v. Metro–N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). This approach requires a district court to set "a reasonable hourly rate, taking account of all case-specific variables," and determine "the appropriate billable hours expended." *Lilly v. City of New York*, 934 F.3d 222, 229–30 (2d Cir. 2019) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 189–90 (2d Cir. 2008)); *see also Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) ("Under this approach, the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate for attorneys and paraprofessionals."). "The reasonable hourly rate should be what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Bergerson v. N.Y. State Off. of Mental Health*, 652 F.3d 277, 289–90 (2d Cir. 2011) (citation and internal quotation marks omitted).

The Supreme Court has explained that district courts should generally use "the prevailing market rates in the relevant community" in determining the reasonable hourly rate. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). The Second Circuit has interpreted the "community" to mean "the district where the district court sits." *See Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 190 (citing *Polk v. N.Y.S Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)); *see also Grant v. Syracuse*, 357 F. Supp. 3d 180, 200 (N.D.N.Y. 2019) (citation omitted). "A review of cases in this District indicates that the following hourly rates (or rate ranges) are reasonable: $250–350 for partners, $165–$200 for associates, and $80–$95 for paralegals, legal assistants, and other paraprofessionals." *Greene Great Am., Inc.*, 2025 WL 1506163, at *5, 2025 U.S. Dist. LEXIS 99628, at *16 (collecting cases).

17

Additionally, "[o]nce the typical hourly rate is established, the court should 'bear in mind *all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate,'" *Id.* (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 190), including:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill level required by the case; (4) the preclusion of employment with other clients due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the extent of involvement in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* (citing *Arbor Hill*, 522 F.3d at 186 n.3).

Plaintiffs have submitted a detailed accounting of the costs incurred and the discrete work that was performed, how long it took, and by whom. (*See* Dkt. No. 17-10, at 2–7). They request $14,698.00 in attorney's fees, representing 39.6 hours of attorney and paralegal time. (Dkt. No. 17-1, at 15; *see also* Dkt. No. 17-10, at 6). Defendants argue that what constitutes "'reasonable attorney's fees' [is] inherently a factual inquiry and therefore subject to attack, cross examination and evaluation," without citing any authority. (Dkt. No. 24-2, at 4). They claim that requests for attorney's fees for being admitted to the Northern District of New York *pro hac vice* and fees that exceed the "lodestar" are "inappropriate and require a hearing." (*Id.*). The Court exercises its discretion to award attorney fees consistent with the award of attorney fees in this district as explained below. *See Barfield*, 537 F.3d at 151.

Plaintiffs' attorney, Richard Siegel, is of counsel at Plaintiffs' counsel's firm and "has over 17 years of practice experience in the employee benefits and employee benefits litigation fields." (Dkt. No. 17-1, at 13). Attorney Siegel was supervised by two principals of Plaintiffs'

18

counsel's firm, Jeffrey Swyers and Meredith Golfo. (*Id.* at 14). Attorney Swyers has had

nineteen years of experience in employee benefits and ERISA litigation, while Attorney Golfo

has over twenty years of experience representing multiemployer benefit plans under ERISA and

has represented the Pension Fund in all ERISA-related legal matters for over ten years. (*Id.*).

Plaintiffs' counsel was assisted by Nezah Khandker, a paralegal at their firm. (*Id.*).

Although the Court concludes that the number of hours spent preparing the motion for

default judgment are reasonable, the Court reduces the rate at which counsel and Paralegal

Khandker are compensated in line with the range of hours rates found reasonable in this district.

Considering all of the relevant factors, with emphasis on the experience of the attorneys, the

extent of involvement in the case, the professional relationship to Plaintiffs, and awards in

similar cases, the Court finds that the appropriate rate for counsel to be $350 per hour and the

appropriate rate for Paralegal Khandker to be $95 per hour. In addition, having reviewed

Plaintiffs' request for costs in the amount of $1,638.30, (Dkt. No. 17-1, at 15; Dkt. No. 17-10, at

7), and having found it reasonable, the Court grants Plaintiffs' request. [5] Accordingly, the Court

awards $12,279.00 in attorney's fees and $1,638.30 in costs.

### 4.    Pre- and Post-Judgment Interest

Plaintiffs seek pre-judgment interest. (Dkt. No. 17-1, at 10). "Interest on withdrawal

liability runs from the initial date the withdrawal liability was due[,]". *See Finkel*, 2023 WL

8455937, at *13, 2023 U.S. Dist. LEXIS 217242, at *43 (citing *Ferrara v. Heavy Constr.*

*Lumber, Inc.*, No. 21-cv-2562, 2022 WL 1085380, at *5, 2022 U.S. Dist. LEXIS 2392, at *11-12

---

[5] This includes Plaintiffs' request for the *pro hac vice* admission fee as "district courts in this Circuit often award attorney's fees and costs associated with *pro hac vice* admission." *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 37 (N.D.N.Y. 2015).

(E.D.N.Y. Jan. 5, 2022)), and continues until judgment is entered, *see Bd. of Trs. of the UFCW Loc. 50 Pension Fund v. Baker Hill Packing Inc.*, No. 13-cv-1888, 2015 WL 867013, at *11, 2015 U.S. Dist. LEXIS 24183, at *25 (E.D.N.Y. Jan. 29, 2015) ("[S]ince [the d]efendant's withdrawal liability remains delinquent, daily interest continues to accrue until judgment is entered."), *report recommendation adopted*, 2015 WL 867013, at *1, 2015 U.S. Dist. LEXIS 23998 (E.D.N.Y. Feb. 27, 2015).  "[T]he applicable interest rate on unpaid withdrawal liability "shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." 29 U.S.C. § 1132(g)(2). *Bd. of Trs. of Loc. 810 Affiliated Pension Fund v. Joseph Eletto Transfer, Inc.*, No. 23-CV-1616, 2024 WL 628808, at *6, 2024 U.S. Dist. LEXIS 18989, at *15 (E.D.N.Y. Feb. 1, 2024).

Here, the Withdrawal Liability Policy provides that interest is assessed "at the rates provided under the regulations of the Pension Benefit Guaranty Corporation in accordance with 29 C.F.R. Section 4219.32." (Dkt. No. 17-1, at 9; *see also* Dkt. No. 17-6, at 8). Section 4219.32(b) of the Code of Federal Regulations provides, inter alia:

> interest under this section shall be charged or credited for each calendar quarter at an annual rate equal to the average quoted prime rate on short-term commercial loans for the fifteenth day (or next business day if the fifteenth day is not a business day) of the month preceding the beginning of each calendar quarter, as reported by the Board of Governors of the Federal Reserve System in Statistical Release H.15 ("Selected Interest Rates").

Section 4219.32(c) provides:

> The interest rate under paragraph (b) of this section is the nominal rate for any calendar quarter or portion thereof. The amount of interest due the plan for overdue or defaulted withdrawal liability, or due the employer for overpayment, is equal to the overdue, defaulted, or overpaid amount multiplied by:
>
> (1) For each full calendar quarter in the period from the due date (or date of overpayment) to the date paid (or date of refund), one-fourth of the annual rate in effect for that quarter;

(2) For each full calendar month in a partial quarter in that period, one-twelfth of the annual rate in effect for that quarter; and

(3) For each day in a partial month in that period, one-three-hundred-sixtieth of the annual rate in effect for that month.

Thus, the Court finds that Plaintiffs are entitled to prejudgment interest from November 13, 2025 to the date of Judgment at the rate specified in Section 4219.32. Plaintiffs are directed to file a supplemental response calculating this rate from the date this motion for default judgment was filed, November 13, 2025, to the date of this Memorandum-Decision and Order. *See Baker Hill Packing Inc.*, 2015 WL 867013, at \*11, 2015 U.S. Dist. LEXIS 24183, at \*25 ("[S]ince [the d]efendant's withdrawal liability remains delinquent, daily interest continues to accrue until judgment is entered."); *see also Ferrara*, 2022 WL 1085380, at \*5, 2022 U.S. Dist. LEXIS 2392, at \*11-12. Plaintiffs are also entitled to post-judgment interest as a matter of right at the statutory rate prescribed by 28 U.S.C. § 1961(a). *See Genworth Life & Health Ins. Co. v. Beverly*, 547 F. Supp. 2d 186, 190 (N.D.N.Y. 2008).

### D.    No Just Reason for Delay

Plaintiffs request that any judgment against the Company Defendants is final because "there is no just reason for delay in entering judgment against the Company Defendants" notwithstanding the claims still pending against Hoy.  (Dkt. No. 17-1, at 16). Defendants respond that there is just delay for entering judgment against the Company Defendants because "the adjudication of liability of the [Company] Defendants could involve an assessment of damages at odds with Plaintiff[s'] claim against George Michael Hoy, and thus the prospect of inconsistent determinations as between the [Company] Defendants and Defendant George Michael Hoy." (Dkt. No. 24-2, at 5). Plaintiffs reply that the damages they seek to recover from Hoy are the same as they seek to recovery from the Company Defendants, and that "the only question left to

21

be resolved is whether Hoy will be jointly-and-severally liable with his wholly-owned Company Defendants." (Dkt. No. 17-1, at 17). Thus, Plaintiffs argue that "while Hoy is free to contest that he is a member of the controlled group, such that he may dispute that he is not jointly-and-severally liable, that is the only thing he can dispute," and there is "no possibility of inconsistent judgments." (Dkt. No. 27, at 14). Further, Plaintiffs argue that there is no just reason for delay in entering judgment against the Company Defendants because there is a risk that delay would make the debt uncollectible and because the corpus and income of the Pension Fund has been reduced. (Dkt. No. 17-1, at 17–18).

Federal Rule of Civil Procedure 54(b) provides, in pertinent part, that "when multiple parties are involved [in an action], the court may direct the entry of a final judgment as to one or more, but fewer than all of the claims or parties only if the court expressly determines that there is no just reason for delay." "More than 125 years ago, the Supreme Court held that when a defendant defaults in an action asserting joint liability, judgment should not be entered against the defaulting defendant until the matter has been resolved against the other defendants or else the defaulting defendant will have 'lost his standing in court.'" *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 414 (S.D.N.Y. 2009), *aff'd,* 387 F. App'x 72 (2d Cir. 2010) (quoting *Frow v. De La Vega*, 82 U.S. 552, 554 (1872)). In the Second Circuit, "*Frow* controls in situations where the liability of one defendant necessarily depends upon the liability of the others." *Int'l Controls Corp. v. Vesco*, 535 F.2d 742, 746 n.4 (2d Cir. 1976). *See also Rivera v. Limassol Grocery, Corp.*, No. 16-cv-6301, 2019 WL 1320339, at *3 (E.D.N.Y. Jan. 4, 2019) ("[T]he *Frow* rule—that in a multi-defendant case, a default judgment should not be entered until litigation has completed against all parties—does not apply simply because there are multiple defendants in the case."). As such, "default judgment cannot be issued where the relief requested would

22

prejudice actively litigating defendants." *Knowles-Carter v. Feyonce, Inc.*, No. 16-cv-2532, 2017 WL 11567528, at \*5 (S.D.N.Y. Sept. 23, 2017) (collecting cases).

The risk of inconsistent judgments is one form of prejudice justly delaying the entry of default judgment. *Waks v. A&H Sec. Servs., LLC*, No. 24-CV-0951, 2025 WL 1752238, at \*2, 2025 U.S. Dist. LEXIS 120277, at \*6 (N.D.N.Y. June 25, 2025) (citing *Hunter v. Shanghai Huangzhou Elec. Appliance Mfg, Co., Ltd.*, 505 F. Supp. 3d 137, 162-63 (N.D.N.Y. 2020) and *Aeronet Worldwide, Inc. v. AB&M Interstate Servs., Inc.*, 22-CV-1081, 2023 WL 6599077, at \*5, 2023 U.S. Dist. LEXIS 181617, at \*10 (N.D.N.Y. Oct. 10, 2023). However, "[t]here is "no just reason for delay . . . where a plaintiff might be prejudiced by a delay in recovering a monetary award." *Upstate N.Y. Eng'rs Health Fund v. Pumpcrete Corp.*, No. 21-CV-00344, 2022 WL 595701, at \*5, 2022 U.S. Dist. LEXIS 35158, at \*12 (N.D.N.Y. Feb. 28, 2022) (citing *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir. 1997)). In addition, courts have found that there is "no just reason for delay" where the corpus and income of ERISA funds have been reduced. *See e.g.*, *Oswego Laborers' Loc. 212 Pension & Annuity Funds v. W.N.Y. Contractors, Inc.*, No. 5:08-CV-0484, 2010 WL 2869576, at \*2, 2010 U.S. Dist. LEXIS 72094, at \*5 (N.D.N.Y. July 19, 2010).

Here, Defendants have not adequately explained why "the adjudication of liability of the [Company] Defendants could involve an assessment of damages at odds with Plaintiff[s'] claim against George Michael Hoy," or how "the possible duplication of claimed damages (attorneys fees/liquidated damages) could result in two final judgments (if the claim against George Michael Hoy is successful) that are inconsistent or irreconcilable."). (Dkt. No. 24-2, at 5). Plaintiffs aver that if the Company Defendants "pay the amount of the judgment entered by this Court, then Plaintiffs will no longer pursue their case against Hoy since there would be no need

23

to seek any amounts from him personally." (Dkt. No. 27, at 14–15). Moreover, the Company Defendants "do[] not dispute their withdrawal liability to Plaintiffs under ERISA." (Dkt. No. 24-1, at 2).

Plaintiffs have shown that there is no just reason for delay because the corpus and income of the Pension Fund has been reduced, and claim that it is "reasonable to conclude that any delay of judgment against the [Company] Defendants could prejudice Plaintiffs' ability to successfully pursue post-judgment discovery pursuant to Fed. R. Civ. P. 69(a)(2) and obtain any sort of recovery" considering that the Company Defendants have defaulted on their withdrawal liability. (Dkt. No. 17-1, at 17–18).

Because Defendants have not adequately shown that there is a risk of inconsistent judgments and because the corpus and income of the Pension Fund has been reduced as a result of the Company Defendants' default on withdrawal liability, the Court finds that there is no just reason for delaying the entry of final judgment against the Company Defendants. *See Pumpcrete Corp.*, 2022 WL 595701, at *5, 2022 U.S. Dist. LEXIS 35158, at *12

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to vacate the default judgment (Dkt. No. 24) is **DENIED**; and it is further

**ORDERED** that Plaintiffs' motion for default judgment against the Company Defendants (Dkt. No. 17) is **GRANTED**; and it is further

**ORDERED** that Plaintiffs are directed to file a supplemental response calculating prejudgment interest from November 13, 2025 to the date of this Memorandum-Decision and Order by August 21, 2026; and it is further

24

**ORDERED** that the parties are directed to meet and confer regarding how they seek to proceed with respect to Defendant Hoy and provide a status report to the Court by August 28, 2026.

**IT IS SO ORDERED.**

Dated: <u>August 7, 2026</u>
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

25